95 P.3d 321 (2004)
152 Wash.2d 107
STATE of Washington, Respondent,
v.
Thomas MULLIN-COSTON, Petitioner.
No. 73765-7.
Supreme Court of Washington, En Banc.
Argued February 19, 2004.
Decided July 15, 2004.
*322 Christopher Gibson, Seattle, for petitioner.
Lee Davis Yates, Seattle, for respondent.
William Berggren Collins, Olympia, for Amicus Curiae (Atty. Gen.).
Debra Leigh Williams Stephens, Bryan Patrick Harnetiaux, Spokane, for Amicus Curiae (Wash. State Trial Lawyers Assoc. Foundation).
BRIDGE, J.
Thomas Mullin-Coston was convicted of premeditated first degree murder for his participation in the killing of 15-year-old Sarah Starling. In an earlier trial, Mullin-Coston's friend, Jason McDaniels, was convicted of second degree murder for his own role in Starling's death. Mullin-Coston argues that his jury inappropriately relied on McDaniels' premeditation to convict Mullin-Coston based on the law of complicity, even though McDaniels' jury concluded that McDaniels had not acted with premeditation. Mullin-Coston argues that as a result, the doctrine of nonmutual collateral estoppel requires reversal of his premeditated first degree murder conviction. This court must determine whether the doctrine of nonmutual collateral estoppel applies in criminal cases where the basis for asserting preclusion is a jury verdict in the case of another defendant. We decline to apply the doctrine in such cases and hold that issues decided by one defendant's jury are not binding on a jury in the later trial of a different defendant.

I

Facts and Procedural History
Fifteen-year-old Sarah Starling dated Jason McDaniels in early 1999, but the couple broke up in early March of that year. On March 9, 1999, Starling made plans to talk with McDaniels in the hopes of bringing closure to their relationship. That evening, she picked up McDaniels and Thomas Mullin-Coston from Anne Marie Kalabany's apartment.
The next day, Starling's body was found in a wooded ravine in Kingsgate Park. The police also recovered a kitchen knife that had disappeared from Kalabany's apartment on the night that Starling was killed.[1] The medical examiner's autopsy revealed the primary cause of death was a stab wound to the neck, while strangulation and other blunt force injuries contributed. According to the State's medical expert, the strangulation alone would have been enough to cause Starling's death, but due to the stabbing, the strangulation was merely a contributing factor.
Both McDaniels and Mullin-Coston were charged with the premeditated first degree murder of Starling. The parties stipulated that the trials should be severed and McDaniels went to trial first. See State v. McDaniels, noted at 114 Wash.App. 1046, 2002 WL 31648777, at *1. At his trial, McDaniels claimed that Mullin-Coston choked Starling before they reached Kingsgate Park, and then Mullin-Coston forced him to stab Starling. The jury was instructed to convict McDaniels of first degree murder if it found that either McDaniels or an accomplice premeditated the killing of Starling but to convict of the lesser charge of second degree murder if it could not unanimously agree that the killing was premeditated. The jury convicted McDaniels of second degree murder but did not complete the general verdict form as to the first degree murder charge. Mullin-Coston then proceeded to trial.
*323 Mullin-Coston filed a motion to dismiss his first degree murder charge on the grounds of collateral estoppel, which the trial court denied.[2] At trial Mullin-Coston testified that while he and McDaniels were waiting for Starling to arrive at Kalabany's apartment, McDaniels claimed he was going to kill Starling and even produced the knife he obtained from Kalabany's kitchen. Mullin-Coston asserted that once they were in the car, McDaniels told Starling to pull over to the side of the road as they approached Kingsgate Park in Kirkland. He testified that McDaniels strangled Starling until she was unconscious, dragged her into a ravine, and stabbed her in the throat. Mullin-Coston said that he remained in the car but did not attempt to separate himself from McDaniels because he "was in shock." 11/06/01 Report of Proceedings (RP) at 49.
However, others testified that Mullin-Coston, not McDaniels, choked Starling in the car. Joe Eddie testified that on the evening of the murder Mullin-Coston admitted that he and McDaniels "just killed somebody," and that "he put a girl to sleep and... Jason stabbed her." 10/29/01 RP at 42-43, 54.[3] Anne Marie Kalabany also testified that she told Mullin-Coston that McDaniels claimed Mullin-Coston choked Sarah. Mullin-Coston nodded to Kalabany and did not correct or contradict McDaniels' account at the time.
Like the instruction used in McDaniels' trial, the "to convict" instruction in Mullin-Coston's case permitted the jury to convict Mullin-Coston of premeditated first degree murder if it found that either he or an accomplice acted with premeditated intent and killed Starling. During deliberations the jury inquired, "[i]f the murder was premeditated does the accomplice have to be in on the premeditation?" Clerk's Papers (CP) at 263. In response, the trial court told the jury to rely on the jury instructions. Mullin-Coston was convicted of premeditated first degree murder and was sentenced to 371 months in prison.
Mullin-Coston appealed, asserting in part that under the doctrine of nonmutual collateral estoppel, the State was precluded from relitigating whether McDaniels acted with premeditation. State v. Mullin-Coston, 115 Wash.App. 679, 680, 64 P.3d 40 (2003). The Court of Appeals rejected that argument and affirmed the conviction. This court granted review to resolve the issue of whether the doctrine of nonmutual collateral estoppel can apply in cases like this one, where preclusion would be based on a prior jury verdict from the trial of a separate defendant.

II

Analysis
In Washington, a person is guilty of first degree murder when, "[w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person." RCW 9A.32.030(1)(a). In contrast, a person is guilty of second degree murder when, "[w]ith intent to cause the death of another person but without premeditation, he causes the death of such person." RCW 9A.32.050(1)(a). A person is guilty of a crime, even if it is committed by the conduct of another person, if he acts as an accomplice by encouraging or aiding in the planning or commission of the crime with the knowledge that his actions will promote or facilitate the crime. See RCW 9A.08.020(1)-(3).
Mullin-Coston argues he is entitled to a new trial because his "to convict" instruction permitted the jury to return a guilty verdict on the first degree murder charge upon finding that Mullin-Coston "or an accomplice" acted with premeditated intent to kill. CP at 256. He contends that at McDaniels' trial, the State failed to prove that McDaniels acted with premeditated intent; thus, the State should not be allowed to relitigate the issue of McDaniels' premeditation *324 in Mullin-Coston's prosecution. Without McDaniels' premeditation, the State would have been required to prove that Mullin-Coston premeditated the murder. Ultimately, Mullin-Coston asserts that because the State was erroneously allowed to rely on McDaniels' premeditation, it was relieved of proving an essential element of his crime, namely that Mullin-Coston himself acted with premeditated intent. See RCW 9A.32.030(1)(a).
Generally, collateral estoppel establishes that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Despite its civil origin, the doctrine of collateral estoppel applies in criminal law through the concept of the Fifth Amendment guaranty against double jeopardy. State v. Williams, 132 Wash.2d 248, 253-54, 937 P.2d 1052 (1997). This case, however, does not implicate either pure collateral estoppel or double jeopardy because Mullin-Coston relies on the jury verdict of another defendant; he never faced jeopardy during McDaniels' trial.
At one time Washington required mutuality, meaning there had to be identity or privity of parties in the same antagonistic relationship in both proceedings, before collateral estoppel could be asserted in the subsequent litigation. See, e.g., Owens v. Kuro, 56 Wash.2d 564, 568, 354 P.2d 696 (1960). Washington courts have since retreated from that traditional rule in the context of civil cases and now apply nonmutual collateral estoppel so long as the party against whom preclusion is sought was a party or in privity with a party to the prior litigation and had a full and fair opportunity to litigate the issue in question. See Kyreacos v. Smith, 89 Wash.2d 425, 428-30, 572 P.2d 723 (1977); see also Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 258, 269, 956 P.2d 312 (1998). The party seeking to enforce the rule must show that:
"(1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of [the] doctrine must not work an injustice."
State v. Bryant, 146 Wash.2d 90, 98-99, 42 P.3d 1278 (2002) (emphasis added) (quoting Williams, 132 Wash.2d at 254, 937 P.2d 1052). In this case, Mullin-Coston asks us to apply the doctrine of nonmutual collateral estoppel by making a prior jury verdict in a case involving a separate defendant binding against the State in his criminal case. This argument presents an issue of first impression in this court and involves a question of law, subject to de novo review. State v. Vasquez, 109 Wash.App. 310, 314, 34 P.3d 1255 (2001), aff'd, 148 Wash.2d 303, 59 P.3d 648 (2002).[4]
*325 Initially, it is important to note that because double jeopardy principles are not implicated in this case, the question here requires us to weigh various practical and policy concerns, but we do not face a constitutional issue. See Standefer v. United States, 447 U.S. 10, 21-25, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (discussing various policy concerns). The Washington Legislature has already weighed the competing policy considerations presented here. In fact, Mullin-Coston's argument runs directly afoul of subsection six of Washington's accomplice liability statute, which provides in relevant part:
A person legally accountable for the conduct of another person may be convicted on proof of the commission of the crime and of his complicity therein, though the person claimed to have committed the crime ... has been convicted of a different crime or degree of crime ... or has been acquitted.
RCW 9A.08.020(6) (emphasis added). Thus, even if McDaniels' jury had acquitted him of all charges, RCW 9A.08.020(6) would still permit Mullin-Coston to be convicted of first degree murder. In order to apply nonmutual collateral estoppel in this case, even just to negate the element of premeditation, we would have to ignore the clear intent of the legislature and render RCW 9A.08.020(6) inoperative.
Moreover, the United States Supreme Court has refused to apply nonmutual collateral estoppel in federal criminal prosecutions, concluding that the policy reasons for applying the doctrine in civil cases are outweighed by competing concerns in the criminal context. Standefer, 447 U.S. at 22-25, 100 S.Ct. 1999. In Standefer, the defendant was charged with aiding and abetting an Internal Revenue Service (IRS) agent in accepting unlawful compensation. Id. at 11-12, 100 S.Ct. 1999. The IRS agent was prosecuted first and was convicted on some counts, but acquitted on others. Id. at 12-13, 100 S.Ct. 1999. Even so, Standefer was then convicted for aiding and abetting the agent on all of the counts, including some on which the agent was acquitted. Id. at 13, 100 S.Ct. 1999. The Court affirmed Standefer's convictions, holding nonmutual collateral estoppel did not apply in federal criminal cases. Id. at 25-26, 100 S.Ct. 1999.
The Court recognized that though application of nonmutual collateral estoppel is proper in civil cases, it should not be applied in criminal cases. Id. at 25, 100 S.Ct. 1999. The Court distinguished criminal cases on several grounds, recognizing that "in a criminal case, the Government is often without the kind of `full and fair opportunity to litigate' that is a prerequisite of estoppel." Id. at 22, 100 S.Ct. 1999. For example, procedural rules limit the prosecution's discovery in criminal cases. Id. Furthermore, in federal cases evidence which is inadmissible against one defendant because it was obtained in violation of his constitutional rights may be admissible against another defendant whose rights were not violated. Id. at 23-24, 100 S.Ct. 1999. In response to this reasoning, Mullin-Coston contends that case by case evaluation of new or different evidence available in a second defendant's trial would eliminate these evidentiary and discovery concerns, without the need for creating a blanket rule. However, the Standefer Court rejected such case by case evaluations because they would require potentially protracted and burdensome pretrial hearings that would frustrate the very purpose of judicial economy that collateral estoppel is designed to promote. Id. at 24, 100 S.Ct. 1999.
The Standefer Court also noted that the prosecution in a criminal case cannot obtain a directed verdict or judgment notwithstanding the verdict, no matter how clear the evidence *326 of guilt. Id. at 22, 100 S.Ct. 1999. Nor can the prosecution obtain a new trial on the ground that acquittal was plainly contrary to the evidence. Id. Finally, there is no opportunity for appellate review where a defendant has been acquitted. Id. The Court recognized that these procedural differences permit criminal juries "to acquit out of compassion or compromise or because of `"their assumption of a power which they had no right to exercise, but to which they were disposed through lenity,"'" and such acquittals are unreviewable. Id. (quoting Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (quoting Steckler v. United States, 7 F.2d 59, 60 (2d Cir. 1925))). Similarly, this court has recognized the power of a jury to return a not guilty verdict for impermissible reasons. State v. Goins, No. 731772-2, slip op. at 7, 151 Wash.2d 728, 732, 92 P.3d 181 (2004); State v. Ng, 110 Wash.2d 32, 48, 750 P.2d 632 (1988).
Mullin-Coston attacks this reasoning on two grounds. First, he argues that without any overt indication that an acquittal is the result of compromise, mistake, nullification, passion, or prejudice, the court must presume that the jury has followed its instructions. See State v. Brunson, 128 Wash.2d 98, 109, 905 P.2d 346 (1995). According to Mullin-Coston, his trial court was bound to presume that the State in the McDaniels trial simply failed to meet its burden to prove McDaniels' premeditation beyond a reasonable doubt. Yet such a rule would require subsequent trial courts and appellate courts to determine whether the previous jury's acquittal or conviction of a lesser offense actually resulted from a finding of innocence, a failure of the prosecution to establish proof beyond a reasonable doubt, or from impermissible reasons such as passion or lenity. Such inquiries into jury deliberations are not a task an appellate court will undertake. United States v. Powell, 469 U.S. 57, 66, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); Dunn, 284 U.S. at 394, 52 S.Ct. 189. Indeed, the problems inherent in speculation as to a jury's reasoning have been clearly recognized by this court. Goins, slip op. at 6-8, 151 Wash.2d at 731-733, 92 P.3d 181; State v. McNeal, 145 Wash.2d 352, 359, 37 P.3d 280 (2002); Ng, 110 Wash.2d at 48, 750 P.2d 632.
Second, Mullin-Coston contends that the problem of seemingly inconsistent jury verdicts threatens the integrity of the judicial system. The Standefer Court also considered this danger but ultimately concluded that there exists a:
simple, if discomforting, reality that "different juries may reach different results under any criminal statute. That is one of the consequences we accept under our jury system." While symmetry of results may be intellectually satisfying, it is not required.
Standefer, 447 U.S. at 25, 100 S.Ct. 1999 (quoting Roth v. United States, 354 U.S. 476, 492, n. 30, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)). This court has similarly accepted that verdict inconsistency alone is not enough to justify overturning the second verdict, even when the inconsistent verdicts are rendered by the same jury. See, e.g., Goins, slip op. at 11, 151 Wash.2d at ___, 92 P.3d 181 (refusing to overturn a guilty verdict that conflicted with a special verdict on the same charge); McNeal, 145 Wash.2d at 359, 37 P.3d 280 (refusing to overturn a guilty verdict that conflicted with a special finding on another charge); Ng, 110 Wash.2d at 48, 750 P.2d 632 (refusing to overturn guilty verdicts that were inconsistent with acquittals on other counts). Of course, if we are willing to accept the reality that the same jury can return conflicting verdicts against the same defendant, then we must also accept that our jury system allows two different juries to reach inconsistent answers to the same question posed in the cases of two different defendants. In sum, neither of Mullin-Coston's arguments overcomes the United States Supreme Court's sound reasoning that because a prior verdict involving a different defendant could have been induced by passion, prejudice, or lenity, later prosecutions of different defendants should not be controlled by such verdicts.
Finally, the Standefer Court recognized an inherent distinction between civil litigation and criminal prosecution, namely the public's interest in the enforcement of criminal law:
"The public interest in the accuracy and justice of criminal results is greater than *327 the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction. To plead crowded dockets as an excuse for not trying criminal defendants is in our view neither in the best interests of the courts, nor the public."
Standefer, 447 U.S. at 25, 100 S.Ct. 1999 (emphasis added) (quoting United States v. Standefer, 610 F.2d 1076, 1093 (1979)). Mullin-Coston seems to disagree, arguing that applying nonmutual collateral estoppel to criminal cases furthers the policy of judicial economy in that it would reduce crowded criminal dockets. He cites People v. Taylor, 12 Cal.3d 686, 117 Cal.Rptr. 70, 527 P.2d 622 (1974) for this proposition. The Taylor court did use a principal's acquittal to reverse the conviction of an alleged accomplice where the conviction was based solely on vicarious liability. Id. at 630-31, 117 Cal.Rptr. 70, 527 P.2d 622. Yet the Supreme Court of California has since rejected Taylor, holding instead that "[i]f substantial evidence supports a jury verdict as to one defendant, that verdict may stand despite an apparently inconsistent verdict as to another defendant." People v. Palmer, 24 Cal.4th 856, 103 Cal.Rptr.2d 13, 15 P.3d 234, 235 (2001). California is not alone; the overwhelming majority of courts to confront the issue have held that issues decided by one defendant's jury are not binding in the subsequent prosecution of a different defendant.[5] WE AGREE WITH ALL of those courts and the united states supReme Court; the public interest in the justice of criminal results outweighs the interest in judicial economy.
Mullin-Coston also contends that the Standefer case is entirely distinguishable because he does not seek to completely bar future prosecution, but only to estop the State from obtaining a conviction based on McDaniels' premeditation. However, Mullin-Coston does not explain how the Standefer reasoning would permit a prior jury verdict to form the predicate of a nonmutual collateral estoppel defense, regardless of whether the result was dismissal or a more limited jury instruction in the second trial. In fact, the Court's discussion of the concept of jury lenity negates this view. See Standefer, 447 U.S. at 22-23, 100 S.Ct. 1999. The specific relief sought based on the prior jury verdict is irrelevant.
Finally, this case is also distinguishable from the only remaining, still valid, appellate decision allowing nonmutual collateral estoppel to bar a criminal prosecution. State v. Gonzalez, 75 N.J. 181, 380 A.2d 1128 (1977). In Gonzalez, the police conducted an unlawful search of an automobile which resulted in the indictment of Gonzalez and a codefendant. Id. at 1129-30. In the codefendant's case, the trial court suppressed the evidence obtained in the search, but a separate trial court subsequently denied Gonzalez's motion to suppress the same evidence. Id. at 1130. The New Jersey Supreme Court reversed, holding nonmutual collateral estoppel applied to prevent the State from relitigating constitutionality of the search against Gonzalez. Id. at 1130, 1135. Gonzalez is readily distinguishable from this case because the basis for collateral estoppel there was a trial court's suppression of evidence, not a jury verdict. Indeed, New Jersey courts have since construed Gonzalez to be limited to its facts and have adopted the Standefer reasoning. See State v. Parris, 175 N.J.Super. 603, 421 A.2d 604, 606 (1980).
In sum, we decline Mullin-Coston's invitation to depart from the plain intent of the legislature, the sound reasoning of the United States Supreme Court, and the weight of the overwhelming majority of other courts that have addressed the issue. Instead, we hold that issues decided by one defendant's jury are not binding in the later *328 trial of a different defendant; thus the doctrine of nonmutual collateral estoppel does not apply in criminal cases where the basis for asserting preclusion is a jury verdict in the case of a separate defendant.[6]

III

Conclusion
We conclude that one jury verdict may not impact prosecution of a second criminal defendant, even if the conviction of the second defendant would result in inconsistent jury verdicts. Therefore, we affirm the Court of Appeals and uphold Mullin-Coston's conviction.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, CHAMBERS, OWENS and FAIRHURST, JJ.
SANDERS, J. (concurring).
The majority affirms Thomas Mullin-Coston's conviction by asserting "the doctrine of nonmutual collateral estoppel does not apply in criminal cases where the basis for asserting preclusion is a jury verdict in the case of a separate defendant." Majority at 328. While I agree with the majority's ultimate disposition, I write separately because the majority's dictum is needlessly broader than it should be.
This court generally considers only those issues necessary to properly dispose of the case, rather than examining each and every issue posed by the parties. Griffin v. W. RS, Inc., 143 Wash.2d 81, 88, 18 P.3d 558 (2001); Schmidt v. Cornerstone Invs., Inc., 115 Wash.2d 148, 165, 795 P.2d 1143 (1990); Ajax v. Gregory, 177 Wash. 465, 475, 32 P.2d 560 (1934). The majority's sweeping language is plainly unnecessary because these facts are not enough to invoke collateral estoppel in the first place.
There are four elements that must be met before the court will preclude litigation of an issue in a subsequent case:
(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea of collateral estoppel is asserted a party or in privity with the party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?
State v. Tili, 148 Wash.2d 350, 361, 60 P.3d 1192 (2003) (emphasis added); see also Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 262-63, 956 P.2d 312 (1998). The party asserting preclusion has the burden to prove all four elements. State v. Williams, 132 Wash.2d 248, 254, 937 P.2d 1052 (1997); McDaniels v. Carlson, 108 Wash.2d 299, 303-04, 738 P.2d 254 (1987). Absence of any element prevents application of collateral estoppel. Tili, 148 Wash.2d at 361, 60 P.3d 1192; McDaniels, 108 Wash.2d at 303, 738 P.2d 254. "In addition, collateral estoppel precludes only those issues that have actually been litigated and determined...." McDaniels, 108 Wash.2d at 305, 738 P.2d 254 (emphasis added).
Here the asserted basis for issue preclusion is Jason McDaniels' conviction of second degree murder, which Mullin-Coston claims is proof of the jury's determination that McDaniels, Mullin-Coston's cohort, did not act with premeditation. But this record only suggests the McDaniels jury either acquitted McDaniels of first degree murder or simply failed to reach unanimity on the premeditation issue. Specifically, the jury verdict which convicted McDaniels of second degree murder provided:
 We, the jury, find the defendant, Jason Roy McDaniels, not guilty of the crime
 of Murder in the First Degree as charged, or being unable to unanimously agree
 as to that charge, find the defendant Jason Roy
 McDaniels, GUILTY of the lesser
 (write in not guilty or guilty)
 included crime of Murder in the Second Degree.
*329 Clerk's Papers (CP) at 315 (emphasis added).[1] The jury elected to forgo using the general verdict form, instead of returning a unanimous verdict of not guilty to first degree murder. See CP at 316.[2] These facts signal the possibility  if not probability  the jury did not reach unanimity on the premeditation issue.
The distinction between a unanimous "not guilty" verdict and a jury's failure to reach unanimity on the higher charge undercuts Mullin-Coston's assertion that McDaniels' second degree murder conviction ipso facto constituted a conclusive determination on the premeditation issue, even though here a not guilty verdict and failure to reach unanimity had the same consequence. For instance, when only a single charge is at issue in a criminal trial the jury's failure to reach unanimity does not result in the conclusive rejection of the State's case but rather a hung jury and an opportunity to reprosecute the defendant. See Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (double jeopardy does not prevent second prosecution of same defendant when first prosecution results in hung jury); State v. Carson, 128 Wash.2d 805, 821, 912 P.2d 1016 (1996) (same). Absent some showing by Mullin-Coston that this jury unanimously concluded McDaniels did not act with premeditation, he fails to meet his burden to prove the first jury "determined" the issue of McDaniels' premeditation McDaniels, 108 Wash.2d at 305, 738 P.2d 254.
Yet the majority nonetheless imposes a per se bar against all criminal defendants from asserting nonmutual collateral estoppel when the basis for estoppel is a jury verdict. Though I recognize both the United States Supreme Court and overwhelming majority of jurisdictions are in accord with the majority's ultimate conclusion,[3] it is not appropriate for us to join that group unless the issue is properly before us, and the majority even recognizes this principle by refusing to consider the ancillary issue raised by amicus  whether nonmutual collateral estoppel may be asserted against the State in a civil case. See majority at 328 n. 6.
Regardless of the merits to the majority's disposition, I posit this court is improvident to decide issues unnecessary to the disposition of the case at hand. Judicial restraint demands no less.
For the foregoing reasons I concur that Mullin-Coston's conviction should be affirmed.
NOTES
[1] The knife was found three-quarters of a mile from where Starling's body was found, and forensics tests revealed blood found on the knife contained Starling's DNA (deoxyribonucleic acid).
[2] The State seems to assert that Mullin-Coston failed to preserve this issue for appeal. However, Mullin-Coston both moved to dismiss and objected to jury instructions based on the doctrine of nonmutual collateral estoppel. Therefore, he has adequately preserved the issue for review.
[3] Witnesses explained that Mullin-Coston admitted to performing a "sleeper hold" on Starling, a skill he had demonstrated to them in the past.
[4] Mullin-Coston argues that the Court of Appeals decision in this case conflicts with this court's decisions in Bryant, 146 Wash.2d at 99-100, 42 P.3d 1278 (holding issues presented in two hearings involving the same defendant were different, preventing application of collateral estoppel), Williams, 132 Wash.2d at 257, 937 P.2d 1052, (holding that the result of an administrative Department of Social and Health Services hearing involving the same defendant could not prevent the State from later prosecuting the defendant), State v. Dupard, 93 Wash.2d 268, 276, 609 P.2d 961 (1980) (holding that the State was not collaterally estopped from later prosecuting a defendant for a new crime even after a parole board had declared him not guilty), and State v. Peele, 75 Wash.2d 28, 31, 448 P.2d 923 (1968) (holding that prior acquittal of one robbery charge did not prevent prosecution of the same defendant for a different robbery). Although the Bryant and Williams courts recite the requirements for finding collateral estoppel, including the third element which suggests nonmutuality, Bryant, 146 Wash.2d at 99, 42 P.3d 1278, Williams, 132 Wash.2d at 254, 937 P.2d 1052, these cases do not discuss nor apply nonmutual collateral estoppel in the later trial of a different defendant.

Similarly, language in Dupard suggests that mutuality of parties is not required for purposes of asserting collateral estoppel in criminal cases. There the court stated:
As to identity of parties, mutuality of parties is not a limiting ingredient of the collateral estoppel rule imposed by the Fifth and Fourteenth Amendments. It is sufficient that the party against whom the plea of collateral estoppel is asserted was a party or in privity with a party in the prior litigation.
93 Wash.2d at 273, 609 P.2d 961. The Dupard court, however, addressed whether there was identity of parties between "`the State'" as prosecution in a defendant's subsequent criminal trial and "`the State'" as the party seeking parole revocation in the defendant's prior parole revocation proceeding. The Dupard court held that "[t]he same sovereign [was] involved in both instances." Id. Critically, like the Bryant and Williams courts, the court did not discuss instances where a different defendant asserts that collateral estoppel applies in a later trial. Thus, nothing in Dupard can be read to suggest that the doctrine of nonmutual collateral estoppel applies in Mullin-Coston's case.
[5] See, e.g., Kott v. State, 678 P.2d 386, 393 (Alaska 1984); State v. Edwards, 136 Ariz. 177, 665 P.2d 59, 70 (1983); Palmer, 103 Cal.Rptr.2d 13, 15 P.3d at 235; People v. Franklin, 167 Ill.2d 1, 212 Ill.Dec. 153, 656 N.E.2d 750, 755-56 (1995); Commonwealth v. Cerveny, 387 Mass. 280, 439 N.E.2d 754, 757 (1982); State v. Parris, 175 N.J.Super. 603, 421 A.2d 604, 606 (1980); People v. Berkowitz, 50 N.Y.2d 333, 428 N.Y.S.2d 927, 406 N.E.2d 783, 790 (1980); State v. Campbell, 56 Or.App. 527, 642 P.2d 346, 348-49 (1982); Commonwealth v. Brown, 473 Pa. 458, 375 A.2d 331, 335-36 (1977).
[6] The Attorney General's Office filed an amicus brief arguing that nonmutual collateral estoppel should not apply against the State in civil, as well as criminal cases. Whether nonmutual collateral estoppel should apply against the State in civil matters was not at issue before the trial court or the Court of Appeals. Mullin-Coston did not raise or address this issue in his petition for review. We need not consider issues raised only by amicus and we decline to do so in this case. See, e.g., Rabon v. City of Seattle, 135 Wash.2d 278, 291 n. 4, 957 P.2d 621 (1998).
[1] The jury foreperson wrote the word "GUILTY" on a blank line.
[2] The general verdict form was left blank, with the exception of "NOT USED" written at the top of the form:
 We, the jury, find the defendant, Jason Roy McDaniels,
 ___________________________________ of the crime of Murder in the First Degree
 (write in not guilty or guilty)
 as charged.

CP at 316.
[3] See Standefer v. United States, 447 U.S. 10, 22-24, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980); see also, e.g., Kott v. State, 678 P.2d 386, 393 (Alaska 1984); People v. Allee, 740 P.2d 1, 10 (1987); Reid v. State, 719 N.E.2d 451, 456 (Ind.Ct.App.1999); State v. Arevalo, 2002-NMCA-062, ¶¶ 11-13, 132 N.M. 306, 47 P.3d 866, 869-70.