Filed 2/3/15  P. v. Herrera CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARCUS G. HERRERA,<br><br>        Defendant and Appellant. | A139672<br><br>(San Francisco City & County<br>Super. Ct. No. SCN219162) |

The sole issue in this criminal appeal is whether the trial court prejudicially erred when instructing the jury on the elements of assault with a deadly weapon.  While the trial court, in describing the "present ability" element of the offense, appears to have inadvertently repeated language associated with a related charge, assault by force likely to produce bodily harm, we conclude this did not constitute prejudicial error and therefore affirm the judgment.

**BACKGROUND**

Defendant Marcus Herrera and Robert Frank Musial were involved in an altercation in Golden Gate Park, in which defendant wielded a 2.5-foot long wooden skateboard with metal trucks (which connect the deck of the board to the wheels).  Defendant was lending aid to his friend Christian, who wanted to confront Musial over stolen marijuana.  There is evidence defendant and Christian each inflicted harm of some kind on Musial.  There is also evidence Musial, shortly after the confrontation with defendant and Christian, was attacked by another person, nicknamed Pandora.  Later in

1

the evening, Musial died, according to San Francisco's Chief Medical Examiner, of "probable stress-induced lethal cardiac arrhythmia."[1]

A second amended information, filed March 26, 2013, charged defendant with murder (count 1), second degree robbery (count 2), and, as relevant in this appeal, two counts of assault (counts 3 and 4). Count 3 was for "assault with force likely to cause great bodily injury" under Penal Code section 245, subdivision (a)(4);[2] count 4 was for "assault with a deadly weapon," a skateboard, under section 245, subdivision (a)(1). In connection with counts 3 and 4, the information alleged defendant personally inflicted great bodily injury on Musial under section 12022.7, subdivision (a).

The jury was instructed on the various charges. As to the assault charges, counts 3 and 4, the trial court gave instructions tracking CALCRIM No. 875, which covers a variety of assault offenses under section 245.

As to count 3, assault with force likely to cause great bodily injury, the trial court instructed the jury that to convict defendant, it had to find beyond a reasonable doubt:

"[1.] The defendant did an act that by its nature would directly and probably result in the application of force to a person;
"[2.] The force used was likely to produce great bodily injury;
"[3.] The defendant did that act willfully;
"[4.] When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [and]
"[5.] When the defendant acted, he had the present ability to apply force likely to produce great bodily injury . . . ."

To find defendant guilty of count 4, assault with a deadly weapon, the trial court instructed the jury it had to find:

"[1.] The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person;

---

[1] The chief medical examiner was of the opinion the arrhythmia occurred "in the setting of an assault with blunt force trauma." The defense presented evidence Musial's cannabis use might have contributed to the arrhythmia and his severe coronary artery disease, rather than the assault, might have led to the cardiac arrest.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

"[2.]  The defendant did that act willfully;

"[3.]  When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone[;] and

"[4.]  When the defendant acted, he had the present ability *to apply force likely to produce great bodily injury . . . .* (Italics added.)

Thus, as to the last element of the assault charged in count 4—the "present ability" element—the trial court did not instruct the jury it had to find that "[w]hen the defendant acted, he had the present ability *to apply force with a deadly weapon other than a firearm to a person*," despite CALCRIM No. 875's directions the present ability element should be so phrased when the charged offense is assault with a deadly weapon.  (Italics added.) Rather, the court repeated the language it had used in connection with count 3 for aggravated assault.  At the time, defendant made no objection to the language used by the court.

Tracking CALCRIM No. 875, the court also instructed the jury the phrase "deadly weapon other than a firearm" as used to in the count 4 instruction meant "any object, instrument, or weapon that is inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."

At closing argument, defense counsel spoke to the assault charges.  As to assault with a deadly weapon, she argued the central question was whether defendant used his skateboard as a deadly weapon, that is in a "manner capable of inflicting death or great bodily injury."  While a skateboard is not an inherently dangerous weapon like a knife or gun, defense counsel conceded a skateboard could possibly be used as a deadly weapon, but argued defendant had not used his skateboard in this way.  Counsel pointed to defense evidence that the injuries from the skateboard were no more than moderate.

The jury acquitted defendant of the murder and robbery charges.  On count 3, assault with force likely to cause great bodily injury, the jury acquitted defendant of the charged offense but found him guilty of the lesser included offense of assault (essentially deciding defendant either did not apply, or lacked the present ability to apply, sufficient

3

force—that is, force likely to inflict great bodily harm).[3]  On count 4, assault with a deadly weapon, the jury convicted defendant as charged.  As to both counts, the jury found defendant had not inflicted great bodily injury upon Musial, rejecting as untrue the section 12022.7, subdivision (a) allegations.  Defendant made no challenge to the count 4 verdict in the trial court on the ground of instructional error.

The trial court ultimately suspended sentence and placed defendant on five years' probation.

**DISCUSSION**

"We review de novo whether a jury instruction correctly states the law.  [Citation.] Our charge is to determine whether the trial court ' "fully and fairly instructed on the applicable law." '  [Citation.]  We look to the instructions as a whole and the entire record of trial, including the arguments of counsel.  [Citation.]  Where reasonably possible, we interpret the instructions ' "to support the judgment rather than [to] defeat it." '  [Citation.]"  (*People v. Mason* (2013) 218 Cal.App.4th 818, 825.)

A failure to object to instructional error in the trial court will not forfeit the objection if defendant's substantial rights are affected—that is, if the error resulted in a miscarriage of justice.  (*People v. Gerber* (2011) 196 Cal.App.4th 368, 390.)  When a defendant asserts the trial court erroneously instructed the jury on an element of an offense, his or her failure to object below usually does not result in forfeiture (*ibid.*; *Mason*, *supra*, 218 Cal.App.4th at p. 823), even though "challenges to the clarity and completeness" of instructions are generally forfeited (*People v. Campos* (2007) 156

---

[3]  CALCRIM No. 915 states that to find a defendant guilty of simple assault, the jury must find:  "The defendant did an act that by its nature would directly and probably result in the application of force to a person; [¶] 2.  The defendant did that act willfully; [¶] 3.  When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4.  When the defendant acted, he had the present ability to apply force to a person."

4

Cal.App.4th 1228, 1236; see also *People v. Hudson* (2006) 38 Cal.4th 1002, 1011–1012; *People v. Loza* (2012) 207 Cal.App.4th 332, 350.)[4]

Defendant contends the trial court erroneously instructed the jury on count 4, assault with a deadly weapon, and specifically contends the instruction as to the final, present ability, element was incorrect. As discussed above, the trial court, in describing the present ability element of count 4, told the jury that to find defendant guilty, it had to find that "[w]hen the defendant acted, he had the present ability to apply force likely to produce great bodily injury" instead of, as defendant asserts it should have, that he "had the present ability to apply force with a deadly weapon other than a firearm."

However, as we explain, the instruction given and the instruction defendant asserts should have been given are essentially the same in import.

We start with the instruction given. As to the first element—the wrongful act—it stated as follows, "defendant *did an act with a deadly weapon other than a firearm* that by its nature would directly and probably result in the application of force to a person." (Italics added.) As to the present ability element, the instruction expressly referred to "[w]hen the defendant *acted*." (Italics added.) Thus, the language of the instruction was interrelated. Accordingly, reading the instruction in its entirety, and specifically reading the instruction on the present ability element in light of the instruction on the first element, the jury was told it had to consider whether, when defendant "did an act with a deadly weapon other than a firearm" (that is, when defendant used his skateboard),[5] "he had the present ability to apply force likely to produce great bodily injury." In short, the instruction as to present ability was inextricably linked to use of a deadly weapon and specifically, the skateboard.

We next consider the instructional language defendant asserts should have been given, which phrases the present ability element as whether, "[w]hen the defendant acted, he had the present ability *to apply force with a deadly weapon other than a firearm to a*

---

[4] The Attorney General has not argued forfeiture on appeal.

[5] The skateboard was the only identified deadly weapon, and it is undisputed the jury had to have concluded it was a deadly weapon.

5

*person.*" (Italics added.) Read in conjunction with the instruction given defining "deadly weapon other than a firearm" as "an object, instrument or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing and likely causing death or great bodily injury," the jury would have interpreted the posited language on present ability as asking it to consider whether, when defendant acted (i.e., used his skateboard on Musial), he had the present ability to apply force with an object "likely to cause death or great bodily injury."[6] This is essentially the same query as that posed by the instruction actually given, as explained in the preceding paragraph.

Although assault by aggravated force and assault with a deadly weapon now appear in different subdivisions of section 245, they once were both embraced by (a)(1), and the decision to separate them was for "technical, nonsubstantive" reasons. (Stats. 2011, ch. 183, § 1 [amending section 245; see *People v. Fox* (2014) 224 Cal.App.4th 424, 429, fn. 3.) Indeed, it has been said the two offenses are related because both focus on *how much force a defendant is likely to apply*. (See *People v. Aguilar, supra*, 16 Cal.4th at p. 1032 ["distinguishing between assaults with a deadly weapon . . . and assaults by means of force likely to produce great bodily injury is generally unnecessary, 'since all aggravated assaults are ultimately determined based on the force likely to be applied against a person' "]; *id.* at p. 1036 ["The standard instructions on aggravated assault reflect this fundamental identity of the concepts of assault with a deadly weapon and assault by means of force likely to produce great bodily injury."]; *People v. McGee* (1993) 15 Cal.App.4th 107, 110.)

When we consider the instructions given "as a whole" along with the record and arguments of counsel, and consider the relatedness of the two assault offenses charged, we conclude the trial court's oversight—which neither party pointed out or attempted to correct at trial—did not misinform the jury and did not amount to instructional error. (See *Mason*, *supra*, 218 Cal.App.4th at p. 825; *People v. Brown* (2012) 210 Cal.App.4th

---

[6] No one contends the skateboard was inherently dangerous, like certain weapons with no purpose other than inflicting harm. (See *People v. Aguilar* (1997) 16 Cal.4th 1023, 1037, fn. 10.)

1, 13–14.)  Moreover, it appears the instruction on assault with a deadly weapon did not so much make an incorrect statement of law as lack clarity or completeness, in which case we must view defendant's challenge to that instruction on appeal as forfeited.  (See *People v. Campos*, *supra*, 156 Cal.App.4th at p. 1236.)

Even if use of the more general language constituted error, it was so slight it could not have contributed to the jury's verdict of guilty on count 4, particularly in light of the other instructions given and the arguments of counsel which made it clear the jury could convict defendant only if it found he had had the present ability to apply force with a deadly weapon other than a firearm, namely by way of the skateboard.  (See *People v. Cole* (2004) 33 Cal.4th 1158, 1208–1209 ["a trial court's failure to instruct on an element of a crime is federal constitutional error that requires reversal of the conviction unless it can be shown beyond a reasonable doubt that the error did not contribute to the jury's verdict."].)  Moreover, the verdict on count 4 was not challenged for lack of substantial evidence, and is indeed amply supported by evidence.  Christian, who had pleaded guilty to voluntary manslaughter as to Musial, testified defendant hit Musial four times with a skateboard, but with blows that were "not that hard."  Another witness, however, testified defendant made a "full force hit" with the skateboard on Musial's head "in the back, neck area," despite Musial pleas to stop the assault.  The chief medical examiner's report showed abrasions and contusions consistent with blunt force trauma with some implement.

Defendant asserts the conviction of a lesser included offense on count 3 (assault, rather than aggravated assault) and conviction on count 4 (deadly weapon assault) are inconsistent and this inconsistency demonstrates the instruction on count 4 was prejudicially erroneous.  We need not, and do not, decide whether the verdicts are, in fact, inconsistent, since inconsistent verdicts are tolerated in criminal cases and inconsistency is not a basis for setting a verdict aside.  (*People v. Palmer* (2001) 24 Cal.4th 856, 860–861.)  We note, however, the jury could have discerned a difference in defendant's capability to inflict great bodily injury, depending on whether use of a deadly weapon was taken into account.  (Cf. *People v. Spring* (1984) 153 Cal.App.3d 1199, 1205–1206

[a weak punch with hands, with no weapon, results in but a simple assault].)  In any case, "the existence of inconsistent verdicts [does not] imply . . . jury . . . confus[ion]," as "[a]n inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict." (*People v. Lewis* (2001) 25 Cal.4th 610, 656.)  Thus, the jury's conviction of a lesser included offense as to count 3 provides no basis to infer prejudicial instructional error as to count 4.

## DISPOSITION

The judgment is affirmed.


_____
Banke, J.


We concur:


_____
Humes, P. J.


_____
Dondero, J.