Filed 4/12/22  P. v. Carmichael CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C089524 |
| Plaintiff and Respondent, | (Super. Ct. No. P17CRF0375) |
| v. | |
| EDDIE WAYNE CARMICHAEL, | |
| Defendant and Appellant. | |

Defendant Eddie Wayne Carmichael took about $200 worth of merchandise from a Placerville store, was found out by a store employee, and displayed a hunting knife at two store employees who tried to prevent him from escaping.  He was convicted of second degree robbery (Pen. Code, § 211)[1] with an enhancement for personally using a deadly weapon (§ 12022, subd. (b)(1)) following a jury trial and pleaded no contest to

---

[1] Undesignated statutory references are to the Penal Code.

obstructing an officer (§ 148, subd. (a)(1)). Defendant admitted three strike allegations (§ 667, subds. (b)-(i)) and four prior prison terms (§ 667.5, subd. (b)) and was sentenced to 25 years to life plus five years in state prison.

On appeal, defendant contends: (1) the robbery conviction should be reversed because the record does not show that he was convicted under a legally valid theory; (2) the matter should be remanded for section 1001.36 diversion proceedings; (3) counsel was ineffective in failing to investigate the validity of one of the strike priors; (4) it was an abuse of discretion not to strike any of the strike priors; (5) his sentence constituted cruel and unusual punishment; (6) his prison priors should be stricken under Senate Bill No. 136 (2019-2020 Reg. Sess.) (Sen. Bill. No. 136); and, in a supplemental brief, that the prosecutor committed prejudicial misconduct by misstating the law during argument to the jury.

Substantial evidence supports the robbery conviction; defendant's claim relies on the manner in which the verdicts were rendered and therefore cannot support overturning his conviction. The mental health diversion claim is forfeited, and the record does not support the argument that counsel was ineffective in failing to request a section 1001.36 hearing. Likewise, this record does not support the claim that counsel was ineffective in not investigating one of the strike priors. Agreeing with the contention regarding the prison priors and rejecting the remaining claims, we shall strike the four prison priors and affirm the modified conviction.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Case*

Kristopher Taylor was working as a front-end cashier in a Placerville Grocery Outlet at around 6:00 p.m. on September 14, 2017, when he saw defendant walking out of the store with a white garbage bag full of products from the store. Defendant had not paid for the items, so Taylor followed defendant out of the store and then asked him to stop. Defendant continued walking away after Taylor made repeated requests for him to

2

stop.  When Taylor saw his coworker Melisa Clark at the other end of the parking lot, he called on her to help with defendant.

Defendant drew an open folding knife and held it over his head.  Taylor described the knife as being three to six inches long with an upwards positioned blade.  Defendant held the knife motionless above his head as he headed toward Clark.  He was about 50 feet from Taylor, who had not seen him take out the knife.  Upon seeing the knife, Taylor immediately backed away and told Clark to do the same.

Defendant held the knife over his head for an undetermined time and then ran off.  The bag tore open, and the stolen items dropped out of it as he fled.  The bag contained a little over $200 in store merchandise, all of which was recovered.

Clark was walking to her car when she heard Taylor call out, "Stop him, stop him."  Defendant was about 40 feet away and running in her direction.  He held a fishing knife above his head and told Clark, "Get out of my way."  She did not believe that defendant was intentionally waiving the knife at her; the knife happened to be in the hand defendant waived at her.  Clark got out of defendant's way because it was smart to get out of the way of a person holding a knife.  She did not think defendant was going to stab her and did not perceive his actions as threatening.

Taylor called the police, and defendant was arrested after a brief foot pursuit.  No knife was found.  Defendant executed a *Miranda*[2] waiver and told the police he found the stolen items in the parking lot but had never possessed any weapons.  Defendant said he ran because he was intoxicated and worried that he might have something on him he should not have.  He did not seem intoxicated to the interrogating officer.

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

3

*Defense*

Testifying on his own behalf, defendant said he was homeless and had been drinking a pint of vodka and some malt liquor before the incident. He eventually went to the Grocery Outlet, where he first talked to a clerk and the clerk's wife in the parking lot before entering the store. Defendant shoplifted batteries and duct tape from the store without incident two times that night. During the second incident, defendant heard Taylor call out to him, but defendant kept walking away.

Defendant kept a folding knife in his pocket with the blade open for protection because he lived in a homeless camp. The knife fell out of his pocket while he was running from the store. Defendant picked up the knife and tried to hide it from Clark by closing the knife and putting it in his pocket. He never talked to anyone during this incident and had not intended to threaten either Clark or Taylor. He had just forgotten about the knife, which he eventually threw away.

Defendant ran from the police because he was guilty of shoplifting batteries, and not because he had committed a robbery. He admitted lying to the police and that his intoxication probably affected his perception of the events. Defendant nonetheless maintained he never waived the knife at Clark, never held it over his head, and did not intend to use the knife to get away with the stolen merchandise.

DISCUSSION

I

*Theory of Robbery*

Defendant contends his robbery conviction must be reversed because the jury found him guilty under a legally invalid theory.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

4

The prosecution relied on the theory that defendant committed the robbery by displaying the knife to cause fear in Taylor and Clark. " ' "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for [her] property." ' [Citation.] 'The extent of the victim's fear "do[es] not need to be extreme . . . ." ' '[T]he fear necessary for robbery is subjective in nature, requiring proof "that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." ' [Citation.] 'Actual fear may be inferred from the circumstances, and need not be testified to explicitly by the victim.' [Citation.] ' " 'Where intimidation is relied upon, it [can] be established by proof of conduct, words, or circumstances reasonably calculated to produce fear.' " ' [Citations.]" (*People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1319.) A robbery occurs when a person uses force or fear in an attempt to facilitate the perpetrator's escape, regardless of how the property was originally obtained. (*People v. Gomez* (2008) 43 Cal.4th 249, 265.)

Shortly after deliberation began, the jury asked for read-backs of Taylor's testimony and requested clarification regarding the intent necessary to prove force or fear. The jury also asked for a legal definition of "[d]isplays the weapon in a menacing manner." The trial court answered this question by referring the jury to CALCRIM No. 200, which informed the jury that words and phrases not specifically defined by the court were to be given their ordinary, everyday meanings.

Near the end of the first day of deliberation, the jury informed the trial court it had reached a guilty verdict on robbery but was not able to unanimously agree regarding the personal use of a weapon allegation. This prompted the court to allow additional argument on the allegation. Defense counsel remarked the jury's confusion was linked to the guilty verdict on the robbery count. The jury reached a true finding on the weapon enhancement following the additional argument.

Defendant claims the jury's initial inability to reach a decision regarding the weapon enhancement completely undercuts its finding regarding the fear element of

5

robbery. The jury was instructed with CALCRIM No. 3145 that in order to sustain a true finding on the weapon enhancement, it had to find that defendant "[d]isplays the weapon in a menacing manner." Defendant reasons that if at the time the jury reached the guilty verdict on the robbery count, it could not determine whether defendant displayed the knife in a menacing manner, the jury must have found him guilty of robbery under some theory not involving the menacing display of the knife. While the jury eventually came to a true finding on the weapon enhancement, defendant correctly notes that every verdict "rises or falls on its own." (*People v. Guzman* (2011) 201 Cal.App.4th 1090, 1095, fn. 3.) He finds the jury's questions before the robbery verdict further support the inference that it had trouble determining whether the knife was displayed menacingly. Since there was no other valid theory of guilt other than defendant using the knife to induce fear, defendant concludes the guilty verdict is based on a legally invalid theory and must be reversed.

"The law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely satisfying, consequence of a criminal justice system that gives defendants the benefit of a reasonable doubt as to guilt, and juries the power to acquit whatever the evidence." (*People v. Palmer* (2001) 24 Cal.4th 856, 860.) It is therefore the "general rule" that inconsistent verdicts shall stand. (*People v. Lewis* (2001) 25 Cal.4th 610, 656.) "An inconsistency may show no more than jury lenity, compromise, or mistake, none of which undermines the validity of a verdict. [Citations.]" (*Ibid*.)

Defendant does not contend there was juror misconduct, which would be a valid reason to undermine the verdict. (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1116.) Nor does (or can) defendant claim there is insufficient evidence to support the guilty verdict on the robbery count. Defendant's display of the knife and the store employees' decisions to break off pursuit as a result of this display, is a substantial element supporting the fear element of the crime.

6

Had the verdicts been actually inconsistent, with a guilty verdict on robbery and a not true finding on the weapon enhancement, the robbery verdict would stand under the general rule allowing for inconsistent verdicts. Here, where the verdicts are consistent albeit reached at different times, there is even less reason to depart from the general rule. Since there is no valid reason to disregard the guilty verdict on the robbery charge, defendant's contention is without merit.

II

*Section 1001.36*

Defendant contends he is entitled to remand for the trial court to consider pretrial diversion under section 1001.36.

As noted by California Supreme Court, section 1001.36 became effective immediately as part of the 2018 budget bill. (*People v. Frahs* (2020) 9 Cal.5th 618, 626.) Thus, section 1001.36 was effective on June 27, 2018. (See Credits, 50a pt. 1 West's Ann. Pen. Code (2020 supp.) foll. § 1001.36, p. 9.) While defendant was initially charged via information before the law took effect on December 19, 2017, an amended information was filed on June 15, 2018, and all further proceedings likewise took place after section 1001.36 took effect.

The record does not show that defendant's trial attorney made any motion for pretrial diversion under the existing statute. Because defendant's attorney failed to bring a timely motion for pretrial diversion under section 1001.36, the issue has not been preserved for appeal. " ' "[N]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881.)

7

Anticipating our ruling, defendant asserts counsel was ineffective in failing to seek diversion.**3**

"A criminal defendant's federal and state constitutional rights to counsel (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) include the right to *effective* legal assistance. When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) Defendant also bears the burden on appeal of showing prejudice from the substandard representation. (*People v. Centeno* (2014) 60 Cal.4th 659, 676.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an appellate claim of ineffective assistance." (*Mai,* at p. 1009, italics omitted.) " ' "[I]f the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 (*Mendoza Tello*).)

On this record, defendant cannot meet his burden of affirmatively demonstrating error. The record sheds no light on why trial counsel did not request diversion pursuant to section 1001.36. It does, however, indicate that defendant's trial counsel could have had satisfactory explanations for not doing so, namely that defendant would not qualify for diversion. For example, diversion requires a showing that a diagnosed mental disorder, as described in section 1001.36, subdivision (b)(1)(A) was a "significant factor"

---

**3** Defendant raises several claims of ineffective assistance in different contexts. We apply the same standard of review, as stated in this section, to each claim.

8

in the commission of the crime.  (§ 1001.36, subd. (b)(1)(B).)  Although defendant testified at trial that he was an "extreme alcoholic" and had consumed alcohol to the point of intoxication before the robbery, this does not necessarily satisfy the requirements of section 1001.36, subdivision (b)(1)(B).

Moreover, in order to be eligible for mental health diversion, defendant had to demonstrate that the mental disorder motivating the criminal behavior would respond to mental health treatment, defendant would agree to comply with treatment, and defendant would "not pose an unreasonable risk of danger to public safety" if treated within the community rather than being incarcerated.  (See § 1001.36, subd. (b)(1)(C), (E), & (F).)  The probation report relates that defendant was attending New Beginnings after his release from Folsom State Prison, and, while defendant reported doing well following his release, he relapsed about three years ago when he thought he could manage to use methamphetamine on a single occasion.  This quickly led to daily alcohol use, loss of his job, and homelessness.  Given defendant's extensive criminal history which includes multiple prison sentences and three prior strike convictions starting in 1978, the record does not establish defendant's eligibility for relief under these statutory requirements.

Therefore, on this record, defendant's ineffective assistance claim must be denied.  (*Mai, supra*, 57 Cal.4th at p. 1009; *Mendoza Tello, supra*, 15 Cal.4th at pp. 266-267.)  If there is extra record evidence that defense counsel was indeed ineffective in failing to seek section 1001.36 diversion, defendant may pursue his claim through a writ of habeas corpus.  (See *Mai,* at p. 1009; *Mendoza Tello,* at pp. 266-267.)

III

*Investigating Strike Prior*

Defendant contends counsel was ineffective in failing to investigate whether his 1988 conviction for violating section 245, subdivision (a)(1) was in fact a serious felony and therefore a strike.

9

In 1988, section 245, subdivision (a)(1) applied to "assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury." (Stats 1983 ch. 1092 § 253.) While assault with a deadly weapon is a strike, assault by means likely to produce great bodily injury is not. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065.)

Defendant's claim of ineffective assistance fails here for the same reason it did regarding section 1001.36 diversion. The record here, the abstract of the 1988 conviction, shows a 1988 conviction for violating section 245, subdivision (a)(1) and no more. While this would be insufficient evidence to sustain a strike allegation, defendant admitted the strike priors after consultation with counsel, thereby admitting that the conviction qualified as a strike.

Defendant's argument assumes trial counsel did not investigate the 1988 prior conviction and that investigation would show the conviction was for assault by means likely to produce great bodily injury rather than assault with a deadly weapon. Neither assumption has any basis in the record. Counsel could have investigated the prior conviction and determined it was a strike or could have come to this conclusion after consulting with defendant. As with the prior ineffective assistance claim, if defendant obtains information not in this record supporting the claim that the 1988 prior conviction is not a strike, he may seek relief through habeas. Based on the record before us, he is not entitled to relief on appeal.

IV

*Romero Motion*

Defendant next contends the trial court abused its discretion in denying his motion to dismiss one or more of the strike priors pursuant to *People v. Superior Court (Romero)*

10

(1996) 13 Cal.4th 497 (*Romero*).[4]  He claims that the age of the strike priors and the circumstances of his present conviction demonstrate the interests of justice would have been served by granting his motion.  We are not convinced.

A trial court has the discretion to dismiss strike conviction allegations in the interests of justice under section 1385, subdivision (a).  (*Romero, supra*, 13 Cal.4th at p. 504.)  In deciding whether to exercise its discretion to dismiss strike allegations, the trial court must determine whether the defendant should be deemed outside the spirit of the three strikes law "and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  In making this determination, the court must consider three factors: (1) the nature and circumstances of his present felonies; (2) the nature and circumstances of his strike offenses; and (3) the particulars of the defendant's background, character, and prospects for the future.  (*Ibid.*)

We review the trial court's decision for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)  "In reviewing for abuse of discretion, we are guided by two fundamental precepts.  First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." '  [Citations.]  Second, a ' "decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " '  [Citations.]  Taken together, these precepts establish that a trial court does not

---

[4]  The trial court denied the *Romero* motion in a pretrial proceeding and again at sentencing.

abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

Defendant's three strike priors are old, a robbery with use of a firearm conviction in 1984, the 1988 aggravated assault conviction, and a first degree burglary conviction in 1989. Defendant also has a 1978 juvenile adjudication for assault with a deadly weapon and a 2001 conviction for possession with intent to manufacture methamphetamine (former Health & Saf. Code, § 11383, subd. (c)(1)), with the latter being subject to a three strikes sentence until defendant obtained relief pursuant to section 1170.126. He has spent most of the 40 years since his criminal record started either incarcerated, on probation, or on parole.[5] Although defendant's current conviction is not the most egregious robbery we have seen, it is nonetheless a serious and violent felony in which defendant personally used a deadly weapon.

Defendant's reliance on the jury's initial difficulty to reach a verdict on the weapon enhancement is unpersuasive. The jury sustained the enhancement allegation and there is ample evidence to support the true finding. Defendant's argument that there is nothing in the record to suggest he would continue to commit serious or violent felonies or present a danger to the community is belied by his extensive criminal record and his current conviction for a violent felony. In light of defendant's criminal history and his current offense, it was within the trial court's discretion to deny the *Romero* motion.

V

*Sentence Proportionality*

Defendant claims his 30-year sentence is grossly disproportionate and therefore in violation of the state and federal constitutions. Although defendant did not raise this

---

[5] The current crime was committed while defendant was on probation in another case.

claim in the trial court, we address the claim on the merits in spite of the forfeiture since defendant also raises a claim of ineffective assistance of counsel.

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishment" and "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citation.]" (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117] (*Ewing*); *Lockyer v. Andrade* (2003) 538 U.S. 63, 72 [155 L.Ed.2d 144, 155-156] (*Lockyer*).) While this proportionality principle " 'does not require strict proportionality between crime and sentence,' " it does prohibit " 'extreme sentences that are "grossly disproportionate" to the crime.' [Citation.]" (*Ewing,* at p. 23.) "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." (*Rummel v. Estelle* (1980) 445 U.S. 263, 272 [63 L.Ed.2d 382] (*Rummel*).)

Similarly, the California Constitution prohibits "cruel or unusual punishment." (Cal. Const., art. I, § 17.) A punishment may violate this provision "although not cruel or unusual in its method, [if] it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 .) In *Lynch*, our Supreme Court described three "techniques" the courts have used to administer the California Constitution's prohibition against cruel or unusual punishment: (1) an examination of the nature of the offense and/or the offender with particular regard to the degree of danger both present to society; (2) a comparison of the challenged penalty with the punishments prescribed for more serious offenses in the same jurisdiction, and (3) a comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision. (*Id.* at pp. 425-427.) "A defendant has a considerable burden to overcome when he [or she] challenges a penalty as cruel or unusual. The doctrine of separation of powers is firmly entrenched in the law of California and the court should not lightly encroach on matters which are uniquely in the

13

domain of the Legislature. We must always be aware that it is the function of the legislative branch to define crimes and prescribe punishment. [Citations.]" (*People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 529.)

Defendant asserts his punishment violates the state and federal constitutional prohibition against punishment that is grossly disproportionate to the offense and the offender's culpability. Not so.

To determine whether the current punishment may be considered cruel or unusual punishment, it is necessary to describe what is not. Sentencing an offender to a life sentence was not cruel and unusual punishment for fraudulent use of a credit card, passing a forged check, and " 'felony theft,' " all crimes totaling approximately $300. (*Rummel, supra*, 445 U.S. at pp. 264-266.) Under the California Constitution, the imposition of a 61-year-to-life term for an offender convicted of two counts of residential burglary with two prior convictions for the same offense was not cruel or unusual punishment. (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1401, 1415-1416, disapproved on another ground in *People v. Dotson* (1997) 16 Cal.4th 547, 559, 560, fn. 8.) A sentence of 25 years to life for a felon in possession of a handgun who had two prior robbery convictions was not cruel or unusual punishment. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 819, 828.) Under California's three strikes law, it was not cruel and unusual punishment to sentence a recidivist criminal to 25 years to life for stealing three golf clubs. (*Ewing, supra*, 538 U.S. at pp. 11, 30-31.) Decided on the same day, the court in *Lockyer* held that under California's three strikes law, two consecutive terms of 25 years to life were not cruel and unusual punishment for two counts of petty theft. In response to Justice Souter's dissent that this sentence was equivalent to a life term without the possibility of parole, the court noted the "argument . . . misses the point. Based on our precedents, the state court decision was not contrary to, or an unreasonable application of, our clearly established law." (*Lockyer, supra*, 538 U.S. at p. 74, fn. 1.)

14

Defendant asserts the penalty is grossly disproportionate to the current offense because no force or violence was used in the robbery, and the sentence significantly exceeds that imposed for similar offenses in California and other states. The first argument ignores the fact that defendant used the threat inherent in his display of a deadly weapon, the knife, to complete his theft from the store. That crime, robbery, is a crime of violence classified as a violent felony in this state. (§ 667.5, subd. (c)(9).) Defendant's second contention underplays his recidivism. He has a lengthy history of lawbreaking that included three prior strikes and had been previously sentenced to a three strikes sentence but was granted early release under section 1170.126. Defendants with less culpable current offenses have received similar, constitutionally valid sentences as defendant based on their criminal history. The same is true here.

Defendant's sentence is long but it "reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." (*Ewing, supra*, 538 U.S. at p. 30.) Defendant, like the defendant in *Ewing*, has an extensive history of felony recidivism. He has not shown his case to be so extraordinary that it constitutes a constitutional violation. He is a career criminal who has been sentenced in accordance with the intention of the three strikes law, which punishes not only for the trigger offense but also for his status of having committed " 'repeated criminal acts that have shown that [the offender is] simply incapable of conforming to the norms of society as established by its criminal law.' [Citation.]" (*Id.* at p. 29.) It follows from precedent, the proportionality principle, and the Legislature's intent, that defendant's punishment does not violate the state or federal prohibition against grossly disproportionate punishment.

15

## VI

*Senate Bill No. 136*

Defendant contends and the Attorney General correctly concedes that his four prior prison term enhancements must be stricken in light of legislation taking effect after his sentencing, Sen. Bill No. 136.

Generally speaking, new criminal legislation is presumed to apply prospectively unless the statute expressly declares a contrary intent. (§ 3.) However, where the Legislature has reduced punishment for criminal conduct, an inference arises under *In re Estrada* (1965) 63 Cal.2d 740, " 'that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations.]" (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308.) "A new law mitigates or lessens punishment when it either mandates reduction of a sentence or grants a trial court the discretion to do so. [Citation.]" (*People v. Hurlic* (2018) 25 Cal.App.5th 50, 56.)

Sen. Bill No. 136 narrowed who was eligible for a section 667.5, subdivision (b) prior prison term enhancement. There is nothing in the bill or its associated legislative history that indicates an intent that the court not apply this amendment to all individuals whose sentences are not yet final. Under these circumstances, we find that *Estrada*'s inference of retroactive application applies. (Accord, *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-342 [Sen. Bill No. 136 applies retroactively to cases not yet final on appeal]; *People v. Jennings* (2019) 42 Cal.App.5th 664, 680-682 [same].) Accordingly, the prison priors shall be stricken. Since the trial court already imposed the maximum possible term, remand for resentencing is unnecessary.[6]

---

[6] We reject defendant's claim in a second supplemental brief that he is entitled to the benefits of Senate Bill No. 81 (2021-2022 Reg. Sess.) (Sen. Bill No. 81). Sen. Bill

16

## VII

*Prosecutor Argument:  Jury Deliberations*

In a supplemental brief, defendant contends trial counsel was prejudicially ineffective in failing to object to statements made by the prosecutor during closing argument regarding jury deliberations.

Without objection, the prosecutor made the following statement during closing argument:

"We had or heard instructions, confusing instructions I think we can all agree, regarding lesser included offenses towards the end of that long packet of instructions the judge read to you.  This is what you really need to know about petty theft, which is a lesser included offense of robbery.  It has the same exact elements as robbery, 1 through 4, that I went over to [*sic*] you earlier except it does not require force or fear.

"So, in other words, if you find beyond a reasonable doubt 1 through 4 but you all agree no force or fear was used, you can then move on to the lesser of petty theft and decide whether he was guilty or not guilty of the that lesser.  That's how that works.

"Again, lesser included offenses, petty theft is a lesser of robbery.  Remember, with lessers, and it will be in the instructions given to you, you are not even allowed to consider lessers unless you all agree not guilty on the greater crime.  That doesn't mean, well, half of you think he's guilty of robbery and half of you say no, let's move on to the lesser.  That's not how that works.

---

No. 81 amends section 1385 to allow the trial court to dismiss any enhancement in the interests of justice unless prohibited by initiative, specified the factors the court should take into consideration, and mandated that great weight be given to certain mitigating factors when determining whether to strike an enhancement.  (§ 1385, subd. (c); Stats 2021 ch. 721 § 1.)  However, "[t]his subdivision shall apply to sentencings occurring after the effective date of the act that added this subdivision." (§ 1385, subd. (c)(7).)  Since defendant is not entitled to resentencing, the changes enacted by Sen. Bill No. 81 are inapplicable to this case.

"If you can't reach a verdict on robbery, you just don't sign any verdict forms and give it to the Judge.

"Only if you all agree not guilty and sign not guilty for robbery can you even move and consider the lesser, if that makes sense."

Since the failure to object generally forfeits a claim of prosecutorial misconduct (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328) defendant instead argues counsel was ineffective. According to defendant, the prosecutor's argument misstated the law by telling the jury it must first address the robbery charge before proceeding to the lesser included offense, and this misstatement prejudiced him because the key issue in the case was whether the display of the knife was sufficient to make this a robbery rather than a petty theft.

It is misconduct for the prosecutor to misstate the law to the jury. (*People v. Otero* (2012) 210 Cal.App.4th 865, 870-871.) [A]rguments of counsel 'generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence [citation], and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.' [Citation.]" (*People v. Mendoza* (2007) 42 Cal.4th 686, 703.) "When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for '[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 717.)

A trial court is authorized to give " an instruction that the jury may not *return a verdict* on the lesser offense unless it has agreed beyond a reasonable doubt that defendant is not guilty of the greater crime charged, but it should not be interpreted to prohibit a jury from *considering* or *discussing* the lesser offenses before returning a verdict on the greater offense." (*People v. Kurtzman* (1988) 46 Cal.3d 322, 329;

18

*People v. Dennis* (1998) 17 Cal.4th 468, 536 ["a court may restrict a jury from returning a verdict on a lesser included offense before acquitting on a greater offense, but may not preclude it from considering lesser offenses during deliberations"].)

*People v. Speight* (2014) 227 Cal.App.4th 1229 addressed an argument similar to the one at issue here. The prosecutor argued in rebuttal, " 'in order to get to voluntary manslaughter, you would all have to agree that [Speight], when he chased after the victims and they are running for their lives and he shot them, you would have to all find him not guilty of attempted murder.' " (*Id*. at p. 1240.) The trial court overruled the defense objection because the argument correctly stated the law. (*Ibid*.) The Court of Appeal found the argument did not misstate the law: "We do not, however, read the prosecutor's statements to forbid the jury from considering attempted voluntary manslaughter until they concluded defendant was not guilty of attempted murder. Nor do we read her statements as an attempt to somehow lessen her burden of proof. Read in their totality, we conclude the prosecutor simply informed the jury that to convict Speight of attempted voluntary manslaughter it had to first conclude he was not guilty of attempted murder." (*Id*. at p. 1242.)

The trial court instructed the jury with CALCRIM No. 3517, which informed the jury that if it found defendant not guilty of the greater charged crime it may find him guilty of the lesser included offense, and: "It is up to you to decide the order in which you consider each crime and the relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you found the defendant not guilty of the corresponding greater crime."

To the extent the prosecutor's argument told the jury it must first assess guilt on the robbery charge, that directly contradicts the trial court's instruction and we presume the jury followed the court's directive on the appropriate law rather than the prosecutor's argument. The argument that the jury must acquit on the robbery charge before reaching a verdict on the lesser included offense of petty theft correctly states the law, as noted in

19

*People v. Speight, supra*, 227 Cal.App.4th 1229. Finding the argument either correctly stated the law or did not prejudice defendant, we conclude defendant has failed to carry his burden of establishing ineffective assistance of counsel.

VIII

*Prosecutor Argument:  Mental Element of the Deadly Weapon Enhancement*

The prosecutor made the following statement during supplemental argument on the weapon enhancement:  "Displaying a weapon in a menacing manner, given its ordinary, plain everyday meaning, which was given to you in CALCRIM [No.] 200 yesterday, menacing is threatening.  It's not intentionally threatening.  This is a general intent crime, which means that somebody merely has to do the act and intend to do the act.  They don't have to intend for it to be threatening, they just have to do an act that is threatening."  Defense counsel did not object.

Defendant contends this misstated the law regarding the mental element for the section and counsel was ineffective in failing to object.  He finds the argument an incorrect statement of the law because, in order to use a weapon, the evidence must show "something more than merely being armed."  (*People v. Chambers* (1972) 7 Cal.3d 666, 672; see *People v. Smit* (2014) 224 Cal.App.4th 977, 987 [noting different penalties for merely being armed and for using a weapon].)  Not so.

" 'When the definition of a crime [or enhancement] consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act.  This intention is deemed to be a general criminal intent.  When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime [or enhancement] is deemed to be one of specific intent.' [Citation]" (*People v. Atkins* (2001) 25 Cal.4th 76, 82; see *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1494 [applying *Atkins* to § 12022.5, subdivision (a)  personal use of a firearm enhancement].)

20

The section 12022 enhancement applies to any "person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony . . . ." (§ 12022, subd. (b)(1).)  It is therefore a general intent crime.  The prosecutor's argument correctly described the mental element of the enhancement as general intent and correctly told the jury it was to give the ordinary meaning to the term "menacing."  While the prosecutor stated menacing was not intentionally threatening, read in the context of the entire argument, it does no more than correctly refer to the enhancement as having a general criminal intent rather than a specific intent to threaten.

Since the argument correctly stated the law, counsel was not ineffective in declining to object.  "Counsel is not ineffective for failing to make frivolous or futile motions."  (*People v. Thompson* (2010) 49 Cal.4th 79, 122.)  Such is the case here.

### DISPOSITION

The prior prison term enhancements (§ 667.5, subd. (b)) are stricken.  As modified, the judgment is affirmed.  The trial court is directed to provide an amended abstract of judgment reflecting the modified conviction and to forward a certified copy to the Department of Corrections and Rehabilitation.


_____\s\_____,
BLEASE, Acting P. J.


We concur:


_____\s\_____,
HULL, J.


_____\s\_____,
ROBIE, J.

21