Filed 10/29/13  P. v. Miles CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAY MILES,<br><br>    Defendant and Appellant. | A135732<br><br>(San Francisco City & County<br>Super. Ct. No. SCN217060) |

Ray Miles appeals from his conviction, following a jury trial, for stalking, in violation of Penal Code[1] section 646.9, subdivision (a).  Wilfredo Calis, who sold newspapers at a kiosk, testified that after a period in which he provided loans to Miles, who was homeless, Miles began to come to his kiosk demanding money, threatening violence to Calis.  Calis was afraid and gave money to Miles to the extent of financial hardship to himself.

Miles contends that the trial court abused its discretion when it denied his motion for a new trial on the ground of jury misconduct.  He also contends that his conviction for stalking was not supported by substantial evidence.

We find no merit in Miles's assertions of error and affirm the judgment of the trial court.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

1

## BACKGROUND

### I. *Procedural Background*

The People filed an information charging Miles with stalking, in violation of section 646.9, subdivision (a), and with extortion, in violation of section 520. Miles pleaded not guilty to both counts.

Following selection of a jury, a trial began on February 29, 2012. The jury began its deliberations on March 9, 2012. On March 12, 2012, the jury found Miles guilty of the stalking count, but was deadlocked on the extortion count. The court declared a mistrial on the extortion count and later granted the People's motion to dismiss that count, pursuant to section 1385.

Miles filed a motion for a new trial on the ground of jury misconduct. On May 30, 2012, the court denied the motion for a new trial and sentenced Miles to a three-year prison term and ordered that he serve a split county jail term of 365 days pursuant to section 1170, subdivision (h)(5)(B). The county jail term was deemed served and the court ordered that Miles serve the remainder of his term under the supervision of the probation department.

Miles filed a timely notice of appeal.

### II. *The Evidence Presented at Trial*

### A. *Prosecution Case*

Calis, who was 74 years old in 2011, had been selling newspapers from a kiosk in San Francisco for about three years in April 2011, when Miles began borrowing small amounts of money from him. Miles told Calis that he was homeless and Calis wanted to help. In April and May, Miles repaid the money he had borrowed. The amount Miles repaid in May was about $200.

Miles continued to borrow money from Calis and promised to repay him with interest after May 2011, but never did. Calis complained to Miles in August 2011, and Miles told him: "I will beat you up. I am a thief. I will beat you up. I will kill you." Calis testified that Miles threatened him three times and told him that his relatives would

beat Calis up. Sometimes Calis gave Miles slightly less than $10 and sometimes slightly less than $20.

Miles initially came to Calis for money early in the morning, but in August 2011, he began returning early in the afternoon, asking for more money. Calis estimated that he gave Miles almost $5000 from April to November 2011.

By the end of November 2011, Calis had given Miles so much money that he had depleted his savings and had difficulty paying expenses. Mark Bradley, who delivered newspapers to Calis, saw that Calis had tears in his eyes one day in November. Calis told Bradley about Miles and showed Bradley a sketch he had made of Miles. Calis also told Bradley that he had not gone to the police because Miles had told him that if he did, Miles and "his gang member friends would . . . take him to Oakland and he would never see San Francisco again."

Bradley reported what Calis had told him to the police. When an officer spoke to Calis, Calis confirmed what he had told Bradley. On November 29, 2011, an officer observed Calis's kiosk. Miles arrived and Calis gave him $16. The police officer then arrested Miles. Calis gave the officer a list of the serial numbers of the bills he had given to Miles and the numbers on bills held by Miles matched numbers on the list.

**B.** *Defense Case*

Miles testified on his own behalf. He became homeless two or three years before trial. His income consisted of Supplemental Security Income (SSI) disability benefits and about $15 per day for working odd jobs. Miles also earned $100 to $200 per month panhandling. He would often run out of money before the end of the month and would borrow money from Calis; from Gregory Winslow and Jerry Hurtubise, attorneys for whom he did odd jobs; and from Thomas Tortenson, a bartender at a bar near Calis's kiosk. Miles repaid borrowed funds at the beginning of the next month, but would repay the attorneys by doing extra work for them.

In August or September 2011, Miles lost his ATM card and someone emptied his account. The bank credited his account, but a hold had been placed on his new ATM card and he could not activate it. Miles then lost his wallet with his new ATM card and

3

all his identification. Because Miles had no identification, he could not access his money or write checks. Miles told Calis about the situation and promised to repay Calis when he had sorted out his problems. Miles denied threatening Calis to force Calis to give him money.

Miles stated that from his October 2011 SSI check, which he cashed with difficulty because he had no identification, he repaid Calis $200. From his November check, Miles repaid money owed to Tortenson, but told Calis he would have to wait until he received his December check. On November 28, 2011, Miles borrowed another $8 from Calis and agreed he would not borrow more until he had repaid Calis the $125 he owed Calis at that time. Miles noticed that Calis appeared more anxious about being repaid during November.

On November 29, 2011, Miles greeted Calis. Calis asked if Miles needed money and gave him $16 when Miles said that he did. Miles was then arrested.

Winslow, Hurtubise, and Tortenson testified concerning the help they provided to Miles. Winslow said that Miles would repay loans or do extra work to cover the loans. Tortenson stated that Miles would always repay loans at the beginning of the month.

## DISCUSSION

### I. *Jury Misconduct*

Miles asserts that during deliberations members of the jury expressed bias against panhandlers and the homeless. He also asserts that "the jury foreperson committed other misconduct by introducing extrajudicial information in the form of his own alleged expertise in the area of electronic data into the deliberations." Miles contends that the trial court erred by not granting his motion for a new trial on the ground of jury misconduct. He asks us to reverse his conviction and grant him a new trial or, alternatively, to reverse the trial court's denial of his new trial motion and remand to the trial court for an evidentiary hearing on his allegations of jury misconduct.

Miles's motion for a new trial was based solely on the ground of jury misconduct. In support of his motion, Miles submitted the declaration of a defense investigator concerning interviews the investigator had conducted with three of the jurors. The

4

investigator's reports of those three interviews accompanied the declaration. Because we conclude that the evidence provided in support of the motion was not competent evidence of jury misconduct, we need not consider the content of the investigator's interviews.

**A. *Legal Standard***

Section 1181 provides the grounds upon which a new trial may be granted. One of the grounds is "[w]hen the jury has received any evidence out of court, other than that resulting from a view of the premises, or of personal property." (§ 1181, subd. 2.) Another ground is "[w]hen the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented." (§ 1181, subd. 3.)

Evidence Code section 1150 governs the evidence that is admissible concerning jury deliberations: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined. [¶] (b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."

"The trial court is vested with broad discretion to act upon a motion for new trial. [Citation.] When the motion is based upon juror misconduct, the reviewing court should accept the trial court's factual findings and credibility determinations if they are supported by substantial evidence, but must exercise its independent judgment to determine whether any misconduct was prejudicial." (*People v. Dykes* (2009) 46 Cal.4th 731, 809 (*Dykes*).)

"When a defendant moves for a new trial based on jury misconduct, the trial court undertakes a three-part inquiry. 'First, the court must determine whether the evidence presented for its consideration is admissible . . . . [¶] Once the court finds the evidence is admissible, it must then consider whether the facts establish misconduct . . . . [¶]

5

Finally, if misconduct is found to have occurred, the court must determine whether the misconduct was prejudicial.' [Citation.] In making the determination as to the admissibility of the evidence presented, including declarations of jurors, '. . . the trial court must take great care not to overstep the boundaries established by Evidence Code section 1150.' " (*People v. Sanchez* (1998) 62 Cal.App.4th 460, 475, quoting *People v. Duran* (1996) 50 Cal.App.4th 103, 112-113.)

## C. *Discussion*

The evidence of jury misconduct that Miles presented to the trial court consisted of a defense investigator's reports of interviews with three jurors. The jurors were unsworn when they spoke with the investigator and the investigator's reports of the interviews were hearsay. It is well established that "a trial court does not abuse its discretion in denying a motion for new trial based upon juror misconduct when the evidence in support constitutes unsworn hearsay." (*Dykes*, *supra*, 46 Cal.4th at pp. 806, 810 [no abuse of discretion when trial court found a defense investigator's reports of interviews with several jurors inadmissible as evidence of jury misconduct]; see also *People v. Hayes* (1999) 21 Cal.4th 1211, 1256 ["[n]ormally, hearsay is not sufficient to trigger the court's duty to make further inquiries into a claim of juror misconduct"]; *People v. Von Villas* (1992) 10 Cal.App.4th 201, 252-253 [unsworn letter of jury foreperson not admissible to show jury misconduct, called into doubt on another ground in *People v. Robinson* (2000) 85 Cal.App.4th 434, 445-446]; *People v. Cox* (1991) 53 Cal.3d 618, 697 [no abuse of discretion when court rejected the unsworn statement of a juror and the affidavit of a defense investigator recounting her statement], overruled on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Despite the guidance of *Dykes* that a trial court does not abuse its discretion in denying a motion for a new trial when the evidence in support of alleged jury misconduct constitutes unsworn hearsay, Miles argues that while the evidence he presented "may not have been sufficient to ultimately determine if juror misconduct occurred, it was sufficient to establish a prima facie case and require an evidentiary hearing to determine if the misconduct occurred. The bar against hearsay to support claims of juror

6

misconduct is not absolute and should not be applied against appellant." Miles apparently believes that he can establish a prima facie case of jury misconduct outside the confines of Evidence Code section 1150. He is wrong. "Although prejudice is presumed once misconduct has been established, the initial burden is on the defendant to prove the misconduct. [Citation.] We will not presume greater misconduct than the evidence shows." (*In re Carpenter* (1995) 9 Cal.4th 634, 657.) Miles failed to produce admissible evidence of jury misconduct and thus failed to meet his initial burden.

Miles is also wrong in urging that the proper course for the trial court was to hold an evidentiary hearing to determine if misconduct occurred. "The trial court has the discretion to conduct an evidentiary hearing to determine the truth or falsity of allegations of jury misconduct, and to permit the parties to call jurors to testify at such a hearing. [Citation.] Defendant is not, however, entitled to an evidentiary hearing as a matter of right. Such a hearing should be held only when the court concludes an evidentiary hearing is 'necessary to resolve material, disputed issues of fact.' " (*People v. Avila* (2006) 38 Cal.4th 491, 604.) In this case, there was no admissible evidence of jury misconduct, and no necessity to resolve disputed issues of fact.

Miles points to three cases in which an appellate court reversed a trial court's denial of a motion for a new trial on the ground of jury misconduct, but in each of those cases, which arose on very different records, the trial court had admissible evidence indicating jury misconduct. Moreover, the cases were federal and did not involve the standards of Evidence Code section 1150.[2] Here, where Miles has failed to provide the

---

[2] In *Remmer v. United States* (1954) 347 U.S. 227 (*Remmer*), an unnamed person had told a juror that he could profit by bringing in a verdict favorable to the defendant. (*Id.* at p. 228.) The juror reported this to the judge, who informed the prosecuting attorneys and, as a result, the Federal Bureau of Investigation investigated. (*Ibid.*) The F.B.I. report was considered by the judge and prosecutors alone and the defense learned of the incident only after the jury returned a verdict. (*Ibid.*) Under these circumstances, the case was remanded with direction that the trial court hold a hearing to determine whether the incident was harmful to the defendant. (*Id.* at p. 230.)

In *United States v. Angulo* (9th Cir. 1993) 4 F.3d 843, a juror received a phone call in which the caller said, " 'I know where you live.' " (*Id.* at p. 846.) The next day, the

7

"otherwise admissible evidence" required by section 1150, we must conclude that the trial court did not abuse its discretion either in deciding not to hold an evidentiary hearing or in denying Miles's motion for a new trial.

## II. *Sufficiency of the Evidence*

Miles argues that there was insufficient evidence supporting the jury's finding of guilt on the stalking charge. His theory is as follows: "By failing to convict [Miles] of extortion, the jury rejected the prosecution's theory that the purpose of [Miles's] harassment was to illegally extort money from Calis. Although [Miles's] interactions with Calis certainly may be considered annoying, they do not constitute stalking and harassing, because they fail to satisfy the statutory prerequisites of . . . section 646.9."

Section 646.9 provides, in relevant part: "(a) Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison. [¶] . . . [¶] (e) For the purposes of this section, 'harasses' means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose. [¶] (f) For the purposes of this section,

---

juror told the other jurors about the phone call and they encouraged her to inform the judge. (*Ibid.*) The judge spoke to the juror directly, with a court reporter present but not the attorneys. (*Ibid.*) Citing *Remmer*, the court remanded for the trial court to hold an evidentiary hearing to determine whether the jurors who knew of the threat were able to act impartially and without bias. (*Id.* at pp. 846-848.)

In *Lawson v. Borg* (9th Cir. 1995) 60 F.3d 608, the defendant moved for a new trial based on a claim of jury misconduct, submitting several sworn declarations from jurors. (*Id.* at p. 610.) The prosecution filed an opposition, submitting supporting declarations from three other jurors. (*Ibid.*) The Ninth Circuit agreed with a district court ruling that misconduct had occurred and that it was prejudicial to the defendant, granting the defendant's writ of habeas corpus unless the State of California initiated new trial proceedings. (*Id.* at p. 613.)

'course of conduct' means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose.  Constitutionally protected activity is not included within the meaning of 'course of conduct.' "

Miles argues that because the jury could not reach a verdict on the extortion charge, the jury could not have concluded that Miles's purpose in approaching Calis was to extort money from him, which would not have been a legitimate purpose.  Thus, Miles argues, we must discount the evidence of extortion and all that remains is an intent to borrow money from Calis, which Miles argues is a legitimate purpose.  Miles does not contend that, had he been charged only with a violation of section 646.9, subdivision (a), there would have been insufficient evidence to convict him; rather, he argues that the jury's failure to reach a verdict on the extortion charge cancels out evidence of extortion as it might be applied to the stalking charge.

For the sake of argument only, and without reaching the question, we assume that in Miles's case a finding of guilt for stalking would be inconsistent with a failure to reach a verdict on the extortion count.  The question then would be whether such inconsistency requires reversal of the jury's verdict.

"The law generally accepts inconsistent verdicts as an occasionally inevitable, if not entirely satisfying, consequence of a criminal justice system that gives defendants the benefit of a reasonable doubt as to guilt, and juries the power to acquit whatever the evidence." (*People v. Palmer* (2001) 24 Cal.4th 856, 860.)  The *Palmer* court noted that "[t]he United States Supreme Court has embraced this general rule [giving effect to inconsistent verdicts].  'Inconsistency in a verdict is not a sufficient reason for setting it aside.  We have so held with respect to inconsistency between verdicts on separate charges against one defendant, [citation], and also with respect to verdicts that treat codefendants in a joint trial inconsistently, [citation].' " (*Id.* at pp. 860, 861, quoting *Harris v. Rivera* (1981) 454 U.S. 339, 345, fns. omitted.)

Given clear guidance at both the state and federal level, we cannot accept Miles's arguments that a rule of consistency must apply.  The jury's verdict on the stalking

9

charge must stand or fall on its own merit, not in comparison with the jury's inability to reach a verdict on the extortion charge.

Calis testified that when he complained to Miles that the loans had not been repaid, Miles responded with threats, causing Calis to be afraid and to continue giving money to Miles. Calis's testimony constitutes substantial evidence that Miles approached Calis intending to extort money from him. Miles approached Calis daily over a period of months, alarming and annoying him. The jury's verdict on the stalking charge was supported by substantial evidence. The failure of the jury to reach a verdict on the extortion charge does not diminish that evidence.

## DISPOSITION

The judgment and orders of the trial court are affirmed.


_____
Brick, J.*


We concur:


_____
Haerle, Acting P.J.


_____
Richman, J.


* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10