Filed 5/28/25  P. v. Mancera CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B337201 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA078385) |
| v. | |
| RAYMOND MANCERA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Judge.  Reversed and remanded.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Raymond Mancera (defendant) appeals from the order denying his petition for vacatur of his attempted murder conviction and for resentencing pursuant to Penal Code section 1172.6.[1]  Defendant contends the trial court erred in finding that he was ineligible for relief under the statute as a matter of law.  We agree, reverse the order of denial and remand for a hearing under subdivision (d) of section 1172.6.

**Defendant's 2008 conviction**

In 2008, defendant and codefendants Edward Narvaez, Joaquin Meza, and Bryant Salas were jointly charged by amended information with the following felonies committed on February 23, 2007: murder (§ 187, subd. (a), count 1); attempted murder with the allegation the crime was committed willfully, deliberately and with premeditation (§§ 187, subd. (a), 664, count 2); and assault with a deadly weapon, to wit, a knife (§ 245, subd. (a)(1), count 6).  It was further alleged as to Counts 1 and 2 that both defendant and codefendant Narvaez personally used a knife in the commission of the offense (§ 12022, subd. (b)(1)), and as to all three counts that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

Defendant and his three codefendants were jointly tried, and the jury found defendant guilty of first degree murder as charged in count 1, premeditated attempted murder as charged in count 2, and guilty of assault with a deadly weapon as charged

---

[1]     All further unattributed code sections are to the Penal Code unless otherwise stated.

in count 6.[2]  The jury further found true the knife-use allegations of counts 1 and 2, and the gang allegation as to all three counts.[3]

The trial court sentenced defendant to an aggregate total of 103 years to life in prison.  On direct appeal, this court found insufficient evidence to support the enhancement in count 2 that defendant personally used a knife, and reversed it, reducing defendant's sentence by one year, but otherwise affirmed the judgment.  (*People v. Mancera* (July 22, 2009, B206328) (*Mancera*) [nonpub. opn.].)

**Section 1172.6 petition**

In July 2023, defendant filed a form petition pursuant to former section 1170.95 (since renumbered as section 1172.6).  He checked the boxes alleging required conditions for relief and requested the appointment of counsel.  The court found the petition facially sufficient, appointed counsel, received briefing from both parties,[4] and conducted a hearing on whether defendant had made a prima facie showing pursuant to section 1172.6, subdivision (a).  On March 13, 2024, the court denied the petition upon finding defendant ineligible for relief as a matter of law.

---

[2]     The jury found all codefendants guilty of second degree murder (count 1), attempted murder (count 2), and assault with a deadly weapon (count 6).  The jury found true as to codefendant Narvaez that attempted murder was premeditated and deliberated, and untrue as to Meza and Salas.

[3]     The knife enhancement attached to count 2 was stricken on direct appeal due to insufficient evidence.

[4]     Defense counsel's brief in reply to the prosecution's opposition to defendant's petition was filed February 1, 2024, in the form of a memorandum of points and authorities entitled, "Petition Under Penal Code Section 1172.6."

Defendant filed a timely notice of appeal from the order.

**Relevant legal principles**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), amending sections 188 and 189, the laws pertaining to felony murder and murder under the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The 2019 amendments to sections 188 and 189 effectively eliminated murder liability under the natural and probable consequences doctrine and changed the requirements for felony murder liability. (*People v. Gentile* (2020) 10 Cal.5th 830, 849 (*Gentile*).)[5] Under current law and with exceptions not relevant here, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also enacted former section 1170.95, now section 1172.6, which provides a procedure to petition for retroactive relief for those who could not now be convicted under sections 188 and 189 as amended. (See *People v. Lewis* (2021) 11

---

[5] Under the natural and probable consequences doctrine, a "'person who knowingly aids and abets criminal conduct is guilty of not only the intended [target] crime . . . but also of any other crime the perpetrator actually commits . . . that is a natural and probable consequence of the intended crime.'" (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

4

Cal.5th 952, 957 (*Lewis*).) The procedure presently provides that a petition may be filed by a person convicted of felony murder, murder or attempted murder under the natural and probable consequences doctrine, and any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1); see Senate Bill No. 775 (2021–2022 Reg. Sess.).)

As relevant here, the petition must allege three conditions under section 1172.6, subdivision (a): the charging document "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) "The petitioner was convicted of murder [or] attempted murder . . ."; and (3) "The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

If the petitioner establishes a prima facie case for relief, the court must issue an order to show cause, conduct an evidentiary hearing to decide whether to vacate the murder conviction and resentence the petitioner on any remaining counts if it finds the petitioner is entitled to relief. (§ 1172.6, subds. (c) & (d); *Lewis, supra*, 11 Cal.5th at p. 960.) At the prima facie stage, the allegations of the petition must be accepted as true but, without engaging in factfinding, the trial court may look to the record of conviction to determine whether the allegations have been refuted as a matter of law; and if so, no prima facie showing can be made and the petition is properly denied. (*Lewis, supra*, at pp. 971–972.) The prima facie bar was "'intentionally and correctly set very low.'" (*Id.* at p. 972.) To find ineligibility at the

5

prima facie stage of the proceedings, the facts in the record of conviction must *conclusively* refute the allegations of the petition without resort to factfinding, weighing of evidence, or credibility determinations.  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14; see *Lewis, supra*, at pp. 957, 970–972.)

## DISCUSSION

Defendant contends the trial court erred in finding he was ineligible for relief as a matter of law, as the jury could have relied on the now invalid natural and probable consequences doctrine to convict him of murder and attempted murder.  We independently review the trial court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 545.)

The natural and probable consequences jury instruction given at defendant's trial is as follows:

"One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted.

"In order to find a defendant guilty of the crime of murder, attempted murder, or assault with a deadly weapon under the rule set forth above you must be satisfied beyond a reasonable doubt that:

"1. The crime of assault was committed;

"2. That the defendant aided and abetted that crime;

"3. That a co-principal in that crime committed the crime of murder, attempted murder, or as[s]ault with a deadly weapon; (Counts 1, 2, 6)

6

"4. Said crime of murder, attempted murder, or assault with a deadly weapon was a natural and probable consequence of the commission of the crime of assault.

"In determining whether a consequence is 'natural and probable,' you must apply an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A 'natural' consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen."

We begin with count 2, attempted murder, as the People concede the denial of the petition as to that count was erroneous. The attempted murder instruction given required only the perpetrator to harbor an intent to kill, and the People concede the record of conviction does not conclusively establish defendant was the perpetrator or harbored an intent to kill. The People also note the prosecutor, in summation, urged the jury to apply the natural and probable consequences to the attempted murder count.

The aiding and abetting instruction contained no requirement the aider and abettor must intend to kill or know the actual perpetrator intended to kill. Thus the instructions left room for defendant to be convicted of attempted murder by aiding and abetting the perpetrator's assault with a deadly weapon under the probable consequences doctrine. "[D]efendants . . . convicted of attempted murder are potentially eligible for relief under section 1172.6 if the conviction *could have been* based on the natural and probable consequences doctrine." (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865, italics added.)

7

We thus agree defendant made a prima facie showing as to count 2, which required the trial court to issue an order to show cause and schedule an evidentiary hearing. (See § 1172.6, subds. (c), (d)(3).)

As to count 1, defendant's murder conviction, we recognize that pursuant to the changes made by Senate Bill 1437, a conviction for first or second degree murder under a natural and probable consequences theory is barred. (*People v. Reyes* (2023) 14 Cal.5th 981, 986, citing *Gentile, supra,* 10 Cal.5th at p. 846; see § 188, subd. (a)(3).)

At the prima facie hearing of March 13, 2024, the trial court acknowledged defendant's jury had been instructed regarding the natural and probable consequences doctrine. Although we "review the trial court's *ruling,* not its reasoning" (*People v. Turner* (2020) 10 Cal.5th 786, 807), we consider selected findings to the extent they facilitate our discussion.

The court found although the jury was instructed regarding the natural and probable consequences doctrine, it was limited to the codefendants. The court stated, "the legal decisions of the jury in this case make it clear that [the instruction] was not used in regards to [defendant]." The court appeared to be swayed by the prosecutor's argument at the prima facie hearing that defendant was not convicted under the natural and probable consequences doctrine because in the closing argument at trial the prosecutor did not argue the theory applied to defendant. On the contrary, speaking of natural and probable consequences, the prosecutor argued: "Regardless of who the actual stabber is of [the murder victim], and who was the actual stabber of [the attempted murder victim], all four of them under the law are guilty of the murder because they participated and acted together and they all were aiding and abetting in this assault." He stated

8

defendant was one of the stabbers and he would discuss evidence of that later, and then similarly argued, "[R]egardless of who stabbed who, because they were all acting together in this, and because there was a natural and probable consequence of that fistfight, that gang attack, regardless of who the actual stabber is, they are all guilty of the murder [and] attempted murder . . . ." The prosecutor failed to tell the jury the natural and probable consequences doctrine did not apply to defendant.  Regardless, if the prosecutor had told the jury to disregard the natural and probable consequences instruction with regard to defendant, the jury was instructed with CALJIC No. 1.00 in which it was told: "You must accept and follow the law as I state it to you, regardless of whether you agree with it.  If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions.  [¶]  You must not be influenced by pity for or prejudice against a defendant."

Moreover, the jury was instructed with CALJIC No. 1.01 as follows: "If any rule, direction, or idea is repeated or stated in different ways in these instructions, no emphasis is intended and you must not draw any inference because of its repetition.  Do not single out any particular sentence or any individual point or instruction and ignore the others.  Consider the instructions taken as a whole and each in light of all the others."  The jury was also instructed: "The word 'defendant' applies to each defendant unless you are instructed otherwise."  (CALJIC No. 1.11.)  We have examined the jury instructions given at defendant's trial and find no instruction "otherwise" and nothing

else in the record that would indicate to the jury the probable consequences instruction did not apply to defendant.[6]

The jury returned a general verdict finding defendant guilty of first degree murder and finding true defendant personally used a knife within the meaning of section 12022, subdivision (b)(1), as well as the offense was committed for the benefit of a gang (§ 186.22, subd. (b)(1)(C)). The trial court determined defendant was the actual perpetrator, in part because the jury found the murder to be of the first degree, and therefore deliberate and premeditated, and because defendant personally used a knife in the commission of the murder. Both findings were upheld by the appellate court on direct appeal.

Here, the jury did not make a separate finding that defendant was the actual killer. There were four individuals in this trial, and only defendant was convicted of first degree murder. The jury was instructed, "To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill." (Italics added.) This language did *not* instruct that if the

---

[6] At the prima facie hearing, the prosecutor argued it was clear defendant was the actual killer because he was the only one of the four convicted of first degree murder, "[s]o he couldn't have been convicted under a natural and probable consequences theory because who else would have been the actual killer for him to be convicted under the natural and probable consequences theory?" The argument was faulty, as "[n]onmutual collateral estoppel does not apply to verdicts in criminal cases." (*People v. Superior Court* (*Sparks*) (2010) 48 Cal.4th 1, 5.) "[A] verdict regarding one defendant has no effect on the trial of a different defendant." (*Ibid.*)

*killing* was deliberate and premeditated any person found guilty by whatever theory must be the slayer, which would be the inverse of the instruction. "'[I]t is always possible for a jury to exercise lenity and acquit some of the defendants while convicting others who are in fact no more guilty.'" (*People v. Palmer* (2001) 24 Cal.4th 856, 865.) Thus, it may be that an aider and abettor could be convicted of first degree murder while the actual killer was convicted of second degree murder. (See *People v. Lawley* (2002) 27 Cal.4th 102, 163–164.)

The personal use of a knife does not conclusively mean defendant personally premeditated or intended to kill, as an enhancement for the personal use of a deadly weapon does not necessarily establish ineligibility. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 598.) In *Offley*, the appellate court held the defendant's admission he personally and intentionally discharged a firearm did not constitute an admission he was the actual perpetrator, and "[b]ecause an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Ibid*.) The *Offley* holding has been extended to enhancements for personal use of a knife, as in this case, alleged under section 12022, subdivision (b)(1). (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338–339.)

The People here posit similar theories, arguing because the jury convicted defendant of first degree murder, which requires a premeditated intent to kill, whereas the natural and probable consequences theory was based upon aiding and abetting an assault, the jury necessarily did not base its verdict on the natural and probable consequences doctrine, and thus found he was the actual killer. "[T]he question is not whether it is *likely* a

11

defendant could have felt and acted in [a certain] way, but whether the court's jury instructions foreclose that possibility *as a matter of law*." (*People v. Curiel* (2023) 15 Cal.5th 433, 470 (*Curiel*).)

In its 2014 decision in *People v. Chiu* (2014) 59 Cal.4th 155, 167 (*Chiu*), the Supreme Court held a defendant may *no longer* be convicted of first degree premeditated murder under the natural and probable consequences doctrine. Prior to *Chiu*, such a defendant need not intend to kill, premeditate or deliberate so long as the actual killer had those mental states, as they would be imputed to him. (See *id.* at pp. 166–167.) Defendant was convicted in 2008, and we issued our opinion affirming the judgment in 2009, well before *Chiu*. (See *Mancera, supra*, B206328.) A conviction of first degree premeditated murder under the natural and probable consequences doctrine was permissible at the time defendant's jury was so instructed and at the time his conviction was affirmed.[7] After Senate Bill 1437 amended section 188, subdivision (a)(3), the doctrine of natural and probable consequences could no longer support first or second degree murder liability. (*Curiel, supra*, 15 Cal.5th at p. 462.)

In 2008, the jury was instructed: "A person aids and abets the commission or attempted commission of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of

---

[7] The prima facie inquiry under section 1172.6 is analogous to habeas corpus proceedings. (*Lewis, supra*, 11 Cal.5th at p. 971.) We find the facts of this case to be comparable to those of *In re Loza* (2018) 27 Cal.App.5th 797, a habeas corpus case, and illustrative of an appropriate prima facie analysis under *Chiu, supra*, 59 Cal.4th 155.

committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime." The instruction did not require the aider and abettor to intend to kill or to know the actual perpetrator intended to kill. The jury could thus have found defendant guilty of murder if the death occurred in the course of aiding and abetting an assault.[8]

Direct "'aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea'—[including] knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*Curiel, supra,* 15 Cal.5th at p. 467.) Here, the instructions did not tell the jury to evaluate defendant's individual state of mind or to consider whether he was an aider and abettor who shared the slayer's intent to kill. Thus, "'the relevant language evokes similar

---

[8] The People refer to trial evidence as summarized in *Mancera, supra,* B206328 to argue defendant is ineligible for resentencing on the murder count as a matter of law. The argument fails as it relies on factfinding, weighing of evidence, and credibility determinations. (*People v. Lopez, supra,* 78 Cal.App.5th at p. 14; see *Lewis, supra,* 11 Cal.5th at pp. 957, 970–972.) Moreover, trial evidence summarized in appellate opinions may not be considered either at the prima facie stage under section 1172.6, subdivision (c), or the evidentiary hearing under section 1172.6, subdivision (d). (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238; *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1113–1114.)

13

concepts' but 'it does not cover all of the elements of direct aiding and abetting.'" (*Id.* at pp. 464–465.)

In addition, CALJIC No. 3.00 instructed the jury that all those involved in committing or attempting to commit a crime are principals in the crime and regardless of the extent or manner of participation are equally guilty. When considered in light of all the instructions given, the jury was essentially told a principal, even the aider and abettor of an assault with no intent to kill and foreknowledge of the perpetrator's intent to kill, was as guilty of murder or attempted murder as the perpetrator.

Defendant's petition alleged the information allowed the prosecution to proceed under the natural and probable consequences doctrine, he was convicted of murder or attempted murder under that theory, and "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." We conclude the record of conviction did not refute the allegations of defendant's petition and thus defendant has made a prima showing of eligibility for relief under section 1172.6.

## DISPOSITION

The March 13, 2024 order denying defendant's section 1172.6 petition is reversed and the matter is remanded with directions to issue an order to show cause and proceed with an evidentiary hearing pursuant to subdivision (d) of section 1172.6.

CHAVEZ, J.

We concur:

LUI, P. J.                          ASHMANN-GERST, J.

14